| UNITED STATES DISTRICT COURT | C/M |
| EASTERN DISTRICT OF NEW YORK | |

------------------------------------------------------------X
DR. EGLON BASCOM,

       Plaintiff,

   - against -

THE BROOKLYN HOSPITAL,

       Defendant.
------------------------------------------------------------X

**MEMORANDUM DECISION AND ORDER**

15-cv-2256 (BMC)(LB)

**COGAN**, District Judge.

  This is the latest of many cases which plaintiff, an African-American graduate of a Grenadian medical school, has brought in this district during his 17-year quest to force an American hospital to accept him for the third and final year of his residency in internal medicine. In this action – his third against The Brooklyn Hospital Center (sued here as The Brooklyn Hospital) – plaintiff alleges a violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, claiming that defendant discriminated against him by refusing to permit him to "rejoin" a residency program to which he was never admitted in the first place. Defendant now moves to dismiss this action, arguing that 1) plaintiff failed to adequately exhaust his administrative remedies, 2) this action is barred by *res judicata*, and 3) plaintiff's amended complaint fails to state a claim. In addition, defendant seeks an order enjoining plaintiff from filing any further actions against the hospital and awarding sanctions. For the reasons set forth below, defendant's motion to dismiss and motion for injunctive relief are granted. The motion for sanctions is denied.

## BACKGROUND

  Unless otherwise stated, the following facts are drawn from plaintiff's amended complaint and are assumed to be true for purposes of decision. Plaintiff is an African-American and a graduate of the St. George's University School of Medicine, located in Grenada. He was

certified by the Educational Commission for Foreign Medical Graduates, which enabled him to apply for a residency in the United States. Thereafter, he obtained a "categorical" position for residency training at Brookdale Hospital ("Brookdale").[1]

Plaintiff completed his first year of residency at Brookdale and his second year at Cabrini Medical Center. "Plaintiff had to leave the Residency system" thereafter, however, because of an unspecified "unfair labor practice that was racially motivated by The Brookdale Hospital which entailed wrongfully terminating the plaintiff and refusing to release the plaintiff contractually ... to Cabrini Medical Center ...." As a result, plaintiff never completed his third and final year of residency and cannot work as a physician.

In September 2013, plaintiff applied to defendant to "re-enter the Residency system." Defendant refused to admit plaintiff to its residency program. Plaintiff claims that defendant refused to accept plaintiff "based on the plaintiff's race."

After filing unsuccessful lawsuits against defendant, both in this district and in state court – neither of which are mentioned in plaintiff's pleadings – plaintiff filed a complaint with the New York State Division of Human Rights (the "SDHR"), principally alleging retaliation. That complaint was cross-filed with the Equal Employment Opportunity Commission (the "EEOC"), which issued a right-to-sue letter on April 6, 2015.

---

[1] A "categorical" position is one that offers the full residency training required for board certification in a particular specialty. See https://residency.wustl.edu/Residencies/Pages/ CategoricalvsPreliminary.aspx. In plaintiff's case, the residency training program lasted three years, but Brookdale contracted with residents for only a year at a time.

*The Instant Action*

In his original complaint, plaintiff alleged that he "successfully completed two consecutive years of residency training," one at Brookdale and one at Cabrini Medical Center, and was "fired as a result of [an] unfair labor practice that appeared racially motivated." However, the complaint did not allege any acts of race discrimination on the part of defendant. Indeed, plaintiff implies that his only connection to defendant is that the hospital helped prepare him to enter the residency system when he was still a medical student.

In June 2015, plaintiff filed an amended complaint that adds some new allegations in support of the race discrimination claim. Notably, that pleading alleges, on information and belief, that "White Residents who have successfully completed their first two years of training were allowed to complete their last year but the African American plaintiff is not being allowed to do so." Plaintiff admits that he "does not have access to the precise information about the race of all other Residents in the defendant's program who were allowed to complete their final year." Nonetheless, he states that he is "confident that there is no white United States citizen in Court in this nation trying to rejoin the residency program after being discriminated against." Based on these allegations, plaintiff claims that "defendant's adverse employment action of not allowing the plaintiff to rejoin the Residency program rises to the level of racial discrimination."

*The Instant Motion*

Defendant now moves to dismiss plaintiff's amended complaint on three grounds. First, defendant argues that plaintiff failed to exhaust his administrative remedies because the administrative charge that he filed with the SDHR did not allege specific facts suggesting race discrimination. Second, defendant argues that this action is barred by *res judicata* because plaintiff has already filed a lawsuit in a New York State court regarding the same set of facts

3

alleged in the amended complaint in this action.  Third, defendant argues that, even if this action is not barred, the amended complaint fails to state a plausible claim of race discrimination.

Defendant's motion seeks other relief in addition to an order dismissing this case.  First, noting that plaintiff has already been judicially barred from suing Brookdale in federal court and defendant in State court, defendant requests an order enjoining plaintiff from filing any further federal actions against it.  Second, defendant seeks to recoup the attorney's fees and costs expended in defending this case as a sanction for filing a frivolous action.   Third, defendant asks for an order denying various, allegedly frivolous motions which plaintiff has filed in the course of this litigation, and striking some of those motions because they allegedly contain scandalous and defamatory allegations against defendant.

In his response to defendant's motion, plaintiff makes three points.  First, plaintiff asserts that he has exhausted his administrative rights by filing a charge with the SDHR and the EEOC.  He notes that the EEOC issued a right-to-sue letter, but does not discuss the contents of his administrative charge(s) of discrimination.

Second, plaintiff implies that his prior State court action was not dismissed on the merits, but only because of his failure to exhaust his administrative remedies.  Without further analysis, he asserts that *res judicata* does not apply to bar this action.

Third, plaintiff argues that his amended complaint states a claim for race discrimination.  His argument, however, does not discuss the allegations contained in his pleading.  Rather, plaintiff provides a rambling narrative that contains, at most, conclusory allegations and speculation about race discrimination by defendant.

**DISCUSSION**

*I. The Motion to Dismiss*

   *A. Legal Standard*

In considering a motion to dismiss pursuant to Rule 12(b)(6), a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. See Rothstein v. UBS AG, 708 F.3d 82, 90 (2d Cir. 2013). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," however, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). If a party has not "nudged [her] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed." Id.

"[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). A court must "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (quoting Burgos v. Hopkins, 14 F.3d 878, 790 (2d Cir. 1994)). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," the court must grant leave to amend the complaint. See Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000); Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999).

"Because a Rule 12(b)(6) motion challenges the complaint as presented by the plaintiff, taking no account of its basis in evidence, a court adjudicating such a motion may review only a narrow universe of materials." Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016). Generally, courts do not look beyond "facts stated on the face of the complaint, ... documents appended to the complaint or incorporated in the complaint by reference, and ... matters of which judicial notice may be taken." Concord Assocs., L.P. v. Entm't Props. Tr., 817 F.3d 46, 51 n. 2 (2d Cir. 2016) (internal quotation marks omitted). "[I]n some cases, a document not expressly incorporated by reference in the complaint is nevertheless 'integral' to the complaint and, accordingly, a fair object of consideration on a motion to dismiss." Goel, 820 F.3d at 559. "A document is integral to the complaint 'where the complaint relies heavily upon its terms and effect.'" Id. (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)).

### B. Administrative Exhaustion

Defendant's first argument – that plaintiff did not adequately exhaust his administrative remedies – focuses on the specific facts alleged in the complaint that plaintiff filed with the SDHR in October 2014. Although that document was not attached to plaintiff's complaint or amended complaint, it was referenced in both pleadings. The amended complaint not only alleges that "plaintiff went to the New York State DIVISION OF HUMAN RIGHTS ... to remedy this case," Amended Complaint, p. 3 (emphasis in original),but attaches a copy of a letter from the SDHR and the EEOC's right-to-sue letter relating to the charge of discrimination.

Even if the SDHR complaint were not incorporated by reference, the Court could still consider it because the document is integral to plaintiff's pleadings. In Holowecki v. Fed. Express Corp., 440 F.3d 558, 565 (2d Cir. 2006), aff'd, 552 U.S. 339 (2008), for example, the Second Circuit held that it was proper to consider the plaintiff's relevant filings with the EEOC

6

upon a motion to dismiss, even if none of the documents were attached to the complaint. The Court found that those documents were integral in that case because the plaintiffs relied on them "to satisfy the ADEA time limit requirements." Id. at 565. In this case, plaintiff implicitly relies on the SDHR complaint to establish that his race discrimination claim was timely and properly exhausted. Accordingly, the Court can consider the SDHR complaint upon this motion to dismiss.

The purpose of Title VII's administrative exhaustion requirement is to "give the administrative agency the opportunity to investigate, mediate, and take remedial action ...." *Stewart v. U.S. I.N.S.*, 762 F.2d 193, 198 (2d Cir. 1985). The requirement "is not satisfied by vague, generalized statements." Lumhoo v. Home Depot USA, Inc., 229 F. Supp. 2d 121, 132 (E.D.N.Y. 2002) (quoting Cooper v. Xerox Corp., 994 F.Supp. 429, 432 (W.D.N.Y.1998)). "Specific factual allegations must be made in order for the EEOC to be able to investigate them reasonably." Id.

"Claims not raised in an EEOC complaint, however, may be brought in federal court if they are 'reasonably related' to the claim filed with the agency." Williams v. New York City Hous. Auth., 458 F.3d 67, 70 (2d Cir. 2006) (citing Butts v. City of New York Dep't of Hous. Pres. & Dev., 990 F.2d 1397, 1401 (2d Cir. 1993). The Second Circuit has recognized that "[a] claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." Fitzgerald v. Henderson, 251 F.3d 345, 359-60 (2d Cir. 2001) (internal quotation marks omitted). "The 'reasonably related' exception to the exhaustion requirement is essentially an allowance of loose pleading and is based on the recognition that EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary

7

purpose is to alert the EEOC to the discrimination that a plaintiff claims [he] is suffering." Williams, 458 F.3d at 70 (quoting Deravin v. Kerik, 335 F.3d 195, 201 (2d Cir. 2003) (internal quotations omitted).

Although "[s]ome district courts in this Circuit have considered and rejected the argument that a charge of race or gender discrimination is 'reasonably related' to an EEOC complaint formally alleging only retaliation," the Second Circuit has clarified that this is not a "per se rule." Id. at 70-71. Instead, the question of whether there is a "relationship between a retaliation claim in an EEOC complaint and a subsequently-articulated gender discrimination claim is ... intimately connected to the facts asserted in the EEOC complaint." Id. at 71. For example, where a SDHR complaint alleging retaliation contains "no descriptions of racial harassment or racial discrimination and, in fact, no mention of race at all," the SDHR complaint "would not lead to an investigation into possible race discrimination and racial harassment" and fails to exhaust administrative remedies with respect to these claims. See Little v. NBC, Inc., 210 F. Supp. 2d 330, 375 (S.D.N.Y. 2002). Conversely, when the relation allegations in the charge of discrimination are sufficient to have put the EEOC on notice of a potential discrimination claim, that discrimination claim may be "reasonably related" to the retaliation claim and, therefore, adequately exhausted even if the plaintiff failed to place a "check" in the appropriate box on the form complaint. Williams, 458 F.3d at 71.

In this case, plaintiff checked the box on the SDHR Complaint Form to allege race discrimination. The "Description of Discrimination" section of that form, however, contains no descriptions of racial harassment or racial discrimination. Indeed, it makes no mention of race at all, but alleges that defendant is retaliating against plaintiff "for having filed complaints against the Brookdale Hospital." These allegations "would not lead to an investigation into possible race

discrimination and racial harassment" and, therefore, fail to exhaust administrative remedies with respect to these claims.  See Little, 210 F. Supp. 2d at 375.

### C. *Res Judicata*

Even if plaintiff's race discrimination claim were adequately exhausted, it would be barred by *res judicata*. *Res judicata* bars an action when a prior case involving the same parties or those in privity with them was adjudicated on the merits and the claims asserted in the subsequent action were, or could have been, raised in the prior one.  Pike v. Freeman, 266 F.3d 78, 91 (2d Cir. 2001).  "Generally *res judicata* is an affirmative defense to be pleaded in the defendant's answer."  Day v. Moscow, 955 F.2d 807, 811 (2d Cir. 1992) (citing Fed. R. Civ. P. 8(c)).  "However, when all relevant facts are shown by the court's own records, of which the court takes notice, the defense may be upheld on a Rule 12(b)(6) motion without requiring an answer."  Id.

Defendant's *res judicata* argument does not rely on this Court's own records, but on records relating to a case which plaintiff filed against defendant in the Supreme Court of the State of New York, Kings County.  "A court may take judicial notice of a document filed in another court ... to establish the fact of such litigation and related filings.'"  Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998) (quoting Liberty Mutual Ins. Co. v. Rotches Pork Packers, Inc., 969 F.2d 1384, 1388 (2d Cir. 1992)).  Accordingly, the Court can consider the state-court records and entertain defendant's *res judicata* argument upon this Rule 12(b)(6) motion.  See, e.g., Meegan v. Brown, No. 11-CV-621S, 2012 WL 1883346, at *2 (W.D.N.Y. May 22, 2012); Washington v. U.S. Tennis Ass'n, 290 F.Supp.2d 323, 326 (E.D.N.Y. 2003).

In considering this argument, the Court must look to New York State law. "[T]hough the federal courts may look to the common law or to the policies supporting *res judicata* ... in assessing the preclusive effect of decisions of other federal courts, Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so...." Allen v. McCurry, 449 U.S. 90, 96 (1980). In other words, "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984). See 28 U.S.C. § 1738.

New York has adopted a "transactional approach to *res judicata*, barring a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994) (citing Smith v. Russell Sage Coll., 54 N.Y.2d 185, 445 N.Y.S.2d 68, 71 (1981)). Under this standard, a claim is precluded if the prior state action "arises from the same set of facts and seeks the same remedy, despite the different legal theory advanced." Ferris v. Cuevas, 118 F.3d 122, 126 (2d Cir. 1997). Subsequent claims are not barred, however, where "the initial forum did not have the power to award the full measure of relief sought in the later litigation." Id. (quoting Davidson v. Capuano, 792 F.2d 275, 278 (2d Cir.1986).

Here, plaintiff's prior state action arose from the exact same facts alleged in the amended complaint in this action. The state-court complaint, like the pleadings here, related to defendant's rejection of plaintiff's application for a position as a third-year resident beginning July 1, 2014. It request the same injunctive relief which plaintiff seeks in this action: an order enjoining the hospital from not allowing plaintiff to join the residency program. Although the

10

state-court complaint did not allege race discrimination and did not expressly seek damages, that claim and monetary relief could have been sought in the state-court action.

Plaintiff's state-court action was dismissed about nine months before he commenced this action. In a Decision and Order dated July 17, 2014, the state court not only denied plaintiff's request for preliminary injunctive relief, but dismissed the action for failure to state a claim, noting, "there is no cognizable action at law which would obligate a hospital to hire a former student who had failed to complete a residency program of a different hospital." In light of this decision on the merits in a case involving the same parties and the same "factual grouping" as the case at bar, this action is barred by *res judicata*.

### D. Failure to State a Claim

In light of the foregoing, it is unnecessary to consider defendant's third argument: that plaintiff's amended complaint fails to state a plausible claim of race discrimination. The Court notes, however, that plaintiff's pleading is devoid of any facts suggesting that defendant's refusal to hire plaintiff as a resident was race-related. Indeed, plaintiff's own allegations suggest that defendant's refusal to hire plaintiff stemmed from the fact that he had been previously terminated by another residency program.

## II. The Motions to Enjoin plaintiff from Filing Further Complaints and for Sanctions

In addition to moving to dismiss, defendant moves for an Order 1) enjoining plaintiff from filing further complaints against it and 2) awarding sanctions. It is "beyond peradventure" that the Court possess the authority to enter such an injunction if necessary to prevent further vexatious litigation. Safir v. U.S. Lines, Inc., 792 F.2d 19, 23 (2d Cir. 1986). Indeed, the Second Circuit has opined that "[a] district court not only may but should protect its ability to carry out its constitutional functions against the threat of onerous, multiplicitous, and baseless

litigation." Abdullah v. Gatto, 773 F.2d 487, 488 (2d Cir. 1985) (citing In re Martin-Trigona, 737 F.2d 1254 (2d Cir. 1984)).

The ultimate question which a court must answer in determining whether or not to restrict a litigant's future access to the courts is "whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." Safir, 792 F.2d at 24. In answering this question, courts "should consider the following factors: (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, *e.g.*, does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties." Id.

With respect to the first factor, plaintiff has a very lengthy history of filing duplicative lawsuits. Since 2002, plaintiff has either filed or attempted to file approximately 18 actions in this district. The first of these, which principally alleged that Brookdale engaged in race and national origin discrimination, was dismissed as untimely by Judge Gershon in February 2004. Her order was affirmed on appeal and plaintiff's petition for a writ of certiorari was denied. Bascom v. Fried, No. 02-CV-6627 (NG)(LB), slip op. at 3 (E.D.N.Y. Feb. 24, 2004), aff'd, 116 F. App'x 300 (2d Cir. 2004), cert. denied, 544 U.S. 1036 (2005).

In 2007, plaintiff sued Brookdale once again, alleging, *inter alia*, that Brookdale sent a derogatory letter to another hospital at which plaintiff had applied for a residency, thereby preventing him from obtaining the position. In January 2010, Judge Gershon granted summary judgment to the defendants on the ground that plaintiff had not adduced any evidence of

discriminatory intent. Bascom v. Brookdale Hosp., No. 07-CV-677(NG)(ALC), 2010 WL 475304 (E.D.N.Y. Jan. 15, 2010).

Between March 3 and July 22, 2010, plaintiff filed another four cases against Brookdale, all of which were assigned to Judge Ross. The first of these actions was withdrawn after defendant threatened to seek sanctions under Rule 11 of the Federal Rules of Civil Procedure. The other three actions were summarily dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) on the grounds that they were malicious, frivolous and/or failed to state a claim. See Bascom v. Brookdale Hosp., No. 10-CV-2350 (ARR)(LB), 2010 WL 2540783 (E.D.N.Y. June 15, 2010); Bascom v. Brookdale Hosp., No. 10-CV-3052 (ARR), 2010 WL 2736881 (E.D.N.Y. July 7, 2010); Bascom v. Brookdale Hosp., No. 10-CV-3378 ARR LB, 2010 WL 3124362 (E.D.N.Y. Aug. 3, 2010).

In her memorandum and order dated August 3, 2010, Judge Ross directed plaintiff to "show cause why an order barring him from filing any new *in forma pauperis* action against Brookdale Hospital or related to his former residency at Brookdale Hospital, without first obtaining leave of court, should not be entered against him." Bascom v. Brookdale Hosp., 2010 WL 3124362, at *4. Plaintiff responded to that order to show cause by, *inter alia*, claiming to be "surprise[d]" that his 2010 complaint had been deemed frivolous and malicious. On August 26, 2010, Judge Ross entered an antisuit injunction, requiring plaintiff to obtain leave of Court before filing any new *in forma pauperis* action against Brookdale or related to his prior residency at Brookdale. Bascom v. Brookdale Hosp., No. 10-CV-3378 (ARR)(LB), slip op. at 3 (E.D.N.Y. Aug. 26, 2010).

Following the entry of the bar order, plaintiff moved for leave to file another eight actions against Brookdale. All of the motions attached a proposed complaint that demanded hundreds of

millions of dollars in damages and some form of injunctive relief—usually, an order directing the hospital to rehire plaintiff as a resident or to stop providing damning assessments of plaintiff's abilities. All of plaintiff's motions for leave to file were denied. See Bascom v. Brookdale Hosp., No. 10-MC-602 (ARR), slip op. (E.D.N.Y. Sept. 8, 2010); Bascom v. Brookdale Hosp., No. 11-MC-614 (SLT), slip op. (E.D.N.Y. Aug. 25, 2011); Bascom v. Brookdale Hosp., No. 11-MC-630 (SLT), slip op. (E.D.N.Y. Sept. 12, 2011); Bascom v. Brookdale Hosp., No. 110-MC-652 (SLT), slip op. (E.D.N.Y. Sept. 21, 2011); Bascom v. Brookdale Hosp., No. 12-MC-343 (SLT), slip op. (E.D.N.Y. May 22, 2012); Bascom v. Brookdale Hosp., Nos. 12-MC-363 & 12-MC-371 (SLT), slip op. (E.D.N.Y. June 11, 2012); Bascom v. Brookdale Hosp., No. 12-MC-386 (SLT), slip op. (E.D.N.Y. June 20, 2012). In the last two of the orders denying leave, the Court warned plaintiff that he could be sanctioned if he filed any further motions for leave to file frivolous or malicious actions against Brookdale.

Since June 2012, plaintiff has changed tack, filing actions against defendant instead of Brookdale. The first of these actions was the state-court case discussed in connection with defendant's *res judicata* argument. The state court not only dismissed that action, but granted defendant's request that plaintiff be barred from bringing any further actions to compel defendant to hire him as a resident or to enjoin the hospital from refusing to hire him

About two and one-half months after the state court issued his order, plaintiff sued defendant again, this time in federal court. In Bascom v. Brooklyn Hosp., No. 14-CV-5703 (SLT), plaintiff alleged a Title VII violation, claiming that defendant had engaged in race discrimination by "not allowing him access to rejoin the Medicare Internal Medicine Residency Program." However, plaintiff's pleading did not allege any specific facts to support his assertion that defendant denied his application on account of his race. The Court not only summarily

14

dismissed that action as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B), but expressly warned him that it might expand the range of litigation covered by Judge Ross's 2010 filing injunction if he persisted in commencing frivolous, malicious, or vexatious actions. See Bascom v. Brooklyn Hosp., No. 14-CV-5703 (SLT), slip op. (E.D.N.Y. Sept. 30, 2014).

Although the Court's order, together with the state court's Decision and Order, alerted plaintiff that his actions against defendant were meritless, plaintiff nonetheless continued to litigate against defendant. Less than a month after receiving the Court's order, plaintiff filed his SDHR complaint, seeking to exhaust the very issue that this Court had determined to be frivolous. Although the Court won't speculate as to whether plaintiff was motivated by animus or desperation, it is clear that plaintiff lacked an objective good faith expectation of prevailing.

It is also beyond question that the actions of this *pro se* litigant has caused needless expense to other parties and has posed an unnecessary burden on the Court and its personnel. The Court concludes that there are no other sanctions that would stop plaintiff from continuing to file frivolous complaints as he is not acting rationally. Moreover, plaintiff, who alleges that he is "chronically unemployed with no source of income," and may not be able to pay any monetary sanctions imposed by the Court and, accordingly, is unlikely to be deterred by them.

For these reasons, the Court grants defendant's motion for an order barring plaintiff from filing any further actions against defendant or any other hospital or institution relating to that entity's refusal to admit plaintiff to its residency program, unless plaintiff has applied for and been granted permission to file such an action. Defendant's motion for sanctions is denied. Since the Court is dismissing this action in its entirety, the motions plaintiff has filed in this action for damages and injunctive relief are denied as moot. Defendant's motion to strike some of plaintiff's motions because they contain scandalous and defamatory allegations is also denied,

as it is hard to believe that the allegations plaintiff has made would be taken seriously enough to cause defendant any injury.

## CONCLUSION

For the reasons set forth above, defendant's motion [41] to dismiss, for an anti-suit injunction, and for sanctions is granted except as to sanctions, which are denied. Plaintiff's pending motions [7, 16, 33, 34, 35, 49, 50] are denied as frivolous. Defendant's motion to strike [37] is denied.

In addition, plaintiff is enjoined from filing any new *in forma pauperis* action against The Brooklyn Hospital Center or any other hospital or institution relating to that entity's refusal to admit plaintiff to its residency program, unless plaintiff first obtains leave of Court. The injunction will be enforced as follows. Should plaintiff file any further document in this Court (other than a notice of appeal in this case), the Clerk is directed to open a miscellaneous matter, file the document, close the matter, and docket any additional documents that plaintiff files within that closed matter. This Court shall review each filing to determine if it alleges a colorable claim, but if it does not, no Order will be entered or other action taken in connection with that filing, as Judge Townes had to prepare at least seven orders rejecting different proposed filings, which tends to defeat part of the purpose of the antisuit injunction.

In addition, defendant is relieved from filing any response to any document that plaintiff files in this Court without a Court Order requiring a response, and the Court strongly suggests that defendant accept this relief instead of reflexively responding to any filings that plaintiff may make.

Nothing herein shall be construed as prohibiting plaintiff from filing an appeal of this Memorandum Decision and Order. However, the Court certifies, pursuant to 28 U.S.C. §

1915(a)(3), that any appeal from this Memorandum and Order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).  The Court will enter a separate Judgment and Injunction, upon which the Clerk is directed to close this case.

**SO ORDERED.**

                                                U.S.D.J.

Dated: Brooklyn, New York
        February 26, 2018